UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JERRY VARGAS,
Defendant.

24-CR-110 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

On September 10, 2026, a grand jury returned a superseding indictment charging Jerry Vargas with, *inter alia*, one count of Travel Act murder in violation of 18 U.S.C. § 1952(a)(2)(B) (Count Three) and one count of firearms use, carrying, and possession in violation of 18 U.S.C. § 924(c)(1)(A)(i)-(iii) and (2) (Count Six). (*See generally* ECF No. 88.) Before the Court is Vargas's motion to dismiss Count Six of the superseding indictment. (*See* ECF No. 96.) Vargas argues that the Travel Act offense does not meet the definition of a "crime of violence" for purposes of Section 924(c). Separately, Vargas moves to suppress evidence obtained pursuant to three search warrants. (Mem.)[1] Vargas also moves to sever his trial from co-defendants Ivan Collado and Patricia Villalba. (*Id.*)

## I. Background

On February 28, 2024, a grand jury returned an indictment charging Ivan Collado with conspiracy to commit kidnapping and attempted kidnapping. (*See* ECF No. 5). On February 6, 2025, a grand jury returned a superseding indictment (the "S2 Indictment"), charging Vargas, Collado, Patricia Villalba, and Arecio Collado in nine counts regarding their participation in Raymond Resto's death. (*See* ECF No. 27 ("S2").) On August 27 and August 31, 2026,

[1] Vargas moved to file his motion to suppress and sever under seal (ECF No. 85), which the Court granted (ECF No. 86). Vargas submitted his motion via email to the Court. (Mem.)

respectively, Villalba and Arecio pleaded guilty, pursuant to plea agreements, to certain charges in the S2 Indictment. (*See* ECF No. 97 ("MTD Opp.") at 9.) On September 10, 2026, a grand jury returned another superseding indictment (the "S3 Indictment"), charging Vargas and Collado in eight counts for their role in Resto's death. (*See* ECF No. 88 ("S3").) On October 13, 2026, Collado pleaded guilty to all counts against him in the S3 Indictment without a plea agreement. (*See* MTD Opp. at 9.)

On August 21, 2026, Vargas filed a motion to sever his trial from co-defendants Collado and Villalba and to suppress evidence obtained pursuant to three search warrants for cell-site location information (ECF No. 89-3 ("Cell-Site Warrant")), iCloud storage (ECF No. 89-4 ("iCloud Warrant")), and cellphone data (ECF No. 89-5 ("Cellphone Warrant")). (Mem.) The Government filed its opposition to this motion on September 11, 2026. (ECF No. 89 ("Opp.").)

On October 19, 2026, Vargas filed a motion to dismiss Count Six of the S3 Indictment. (*See* ECF No. 96 ("Mot.").) On November 2, 2026, the Government filed an opposition to Vargas's motion to dismiss. (*See* MTD Opp.)

## II. Motion to Dismiss

### A. Legal Standard

Because "federal crimes are solely creatures of statute," a defendant may move to dismiss any count in an indictment "on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *see also* Fed. R. Crim. P. 12(b)(3)(B)(v). A pretrial motion to dismiss generally may not resolve questions about the sufficiency of the government's evidence, and a court must assume that the allegations in the indictment are true. *See United States v. Benjamin*, 95 F.4th 60, 64 (2d Cir. 2024); *United States v. Sampson*, 898 F.3d 270, 278-79 (2d Cir. 2018). But when a defendant moves to dismiss an indictment "solely upon an issue of law, and not fact," the court may resolve the legal dispute

prior to trial. *United States v. George*, 223 F. Supp. 3d 159, 163 (S.D.N.Y. 2016). Vargas's motion to dismiss raises a purely legal dispute as to whether Count Three satisfies the statutory definition of "crime of violence," such that it can serve, as a matter of law, as the predicate offense for Count Six. *See Aleynikov*, 676 F.3d at 76.

**B. Discussion**

**1. The Statutory Scheme**

Count Six of the S3 Indictment is charged under § 924(c), which criminalizes the use, carrying, or possession of a firearm during and in relation to any "crime of violence." (S3 ¶ 10.) *See also* 18 U.S.C. § 924(c)(1)(A). Accordingly, Count Six "depend[s] by statute on the commission of an underlying 'crime of violence' that is independently cognizable under federal law and that the Government must prove beyond a reasonable doubt, as an element of the Section 924 offense." *United States v. Mangione*, 818 F. Supp. 3d 509, 518 (S.D.N.Y. 2026). Section 924(c)(3) defines "crime of violence" as an "offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).[2] The force required under Section 924 is "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

**2. The Categorical Approach and the Modified Categorical Approach**

"To determine whether an offense is a crime of violence under the elements clause, courts employ what has come to be known as the 'categorical approach.'" *United States v.*

[2] Section 924(c)(3)(B) provides that a crime of violence must, "by its nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," but the Supreme Court held in *United States v. Davis* that this clause is unconstitutionally vague. 588 U.S. 445, 470 (2019). Accordingly, offenses must satisfy the elements clause (§ 924(c)(3)(A)) to qualify as crimes of violence.

*Pastore*, 83 F.4th 113, 118 (2d Cir. 2023), *aff'd sub nom. Delligatti v. United States*, 604 U.S. 423 (2025). This approach ignores the "real-life facts" of whether the defendant used force or violence in committing the specific crime with which he is charged. *Mangione*, 818 F. Supp. 3d at 519 (citing *United States v. Taylor*, 596 U.S. 845, 850 (2022)). Instead, the "only relevant question is whether the federal felony at issue *always* requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 850 (emphasis added).

Under the categorical approach, the court "must 'identify the minimum criminal conduct necessary' to meet the elements of a particular offense and then evaluate whether that least-serious hypothetical conduct—not the defendant's actual conduct—necessarily involves force." *Mangione*, 818 F. Supp. 3d at 520 (quoting *Pastore*, 83 F.4th at 118). While sometimes straightforward, such as when the statutory definition of the crime in question contains language with an "equivalent meaning to 'use of physical force against another,'" the process often requires "prob[ing] the boundaries of the offense to find examples of conduct that might fail the definition of 'crime of violence' but nonetheless satisfy all of the elements of the offense." *Id.* If this stress test determines the underlying offense could be committed without force, then it is not a crime of violence for purposes of the categorical approach. *See Delligatti*, 604 U.S. at 426.

However, if the statute "sets out one or more elements of the offense in the alternative," it "effectively defin[es] multiple separate crimes—some of which might satisfy the crime of violence definition, and some of which might not." *Mangione*, 818 F. Supp. 3d at 520 (quotation marks omitted) (citing *Descamps v. United States*, 570 U.S. 254, 257 (2013)). Such a statute is thus "divisible" into separate crimes. If the court determines that the statute at issue is divisible, it "may employ the 'modified categorical approach' to determine whether it may disregard the

uncharged alternative formulations of the statutory crime." *Mangione*, 818 F. Supp. 3d at 521 (quoting *Mathis v. United States*, 579 U.S. 500, 505-06 (2016)). The modified approach allows "courts to consider 'a limited class of documents,' including the indictment, to determine what crime, with what elements, the defendant has been charged with," though it must still ignore the defendant's actual conduct. *Id.* at 521 (quoting *Mathis*, 579 U.S. at 505-06); *see also Mathis*, 579 U.S. at 513-14.

**3. Divisibility of the Travel Act**

The S3 Indictment identifies the Travel Act violation charged in Count Three as the predicate crime of violence required by Count Six. (S3 ¶ 5.) Accordingly, the first step is to determine whether the Travel Act is divisible and, if so, to what degree. The Travel Act provides, in relevant part:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>
> (1) distribute the proceeds of any unlawful activity; or
>
> (2) commit any crime of violence to further any unlawful activity; or
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to perform—
>
> (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or
>
> (B) an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

18 U.S.C. § 1952(a).

The Travel Act can thus be understood as involving a two-step inquiry. Step One is traveling in interstate or foreign commerce (or using the mail or any facility in interstate or

foreign commerce) with the *intent* to commit an act described in subsections (a)(1), (a)(2), or (a)(3). Step Two is to *perform* or *attempt* to perform an act described in subsections (a)(1), (a)(2), or (a)(3).

The language of this statute makes plain its divisibility. First, at a minimum the Act is divisible at Step Two given the difference in punishments. If a person performs or attempts to perform an act described in subsections (a)(1) or (a)(3), they are punished less severely than if they perform or attempt to perform an act described in subsection (a)(2). *See* 18 U.S.C. § 1952(a)(A)-(B). When "statutory alternatives carry different punishments, . . . they must be elements"; this therefore suffices to establish divisibility. *Mathis*, 579 U.S. at 518. In *Haynes v. United States*, the only federal appellate decision on this question (and one of two federal decisions overall), the Seventh Circuit held the Travel Act to be divisible on this basis:

> The text of § 1952 shows that it creates some distinct offenses and is thus divisible to some extent. For example, a conviction under § 1952(a)(2)(B) for interstate travel to commit a crime of violence carries a longer sentence than a conviction under § 1952(a)(1)(A) for interstate travel to distribute proceeds of unlawful activity. *Those different penalties show that those different parts of the statute define distinct offenses with distinct elements.*

936 F.3d 683, 689 (7th Cir. 2019) (emphasis added); *accord United States v. Griffin*, No. 217-CR-20639, 2022 WL 2071054, at *8 (E.D. Mich. June 8, 2022).

Second, the Travel Act is divisible at Step Two with respect to the distinction between performance and attempt. "[I]n the context of categorical analysis," the Second Circuit "has treated attempt crimes as divisible from completed crimes" because "the "attempt crime and the completed crime have distinct proof requirements." *See United States v. Ross*, 177 F.4th 216, 221 (2d Cir. 2026) (holding criminal statute divisible on this basis); *cf. Taylor*, 596 U.S. at 850-51 (distinguishing between "*completed* Hobbs Act robbery" and "*attempted* Hobbs Act robbery" for purposes of "crime of violence" inquiry because elements required for latter do not contain

force as required for former). After all, attempt comprises (1) "inten[t] to commit the completed offense" and (2) a substantial step toward commission, i.e., "some open deed tending to the execution of his intent." *United States v. Resendiz-Ponce*, 549 U.S. 102, 106 (2007); *accord United States v. Ullah*, 173 F.4th 399, 431-32 (2d Cir. 2026). Naturally, these elements always differ from the elements of the crime that was attempted. This distinction establishes divisibility.

Even on just these two distinctions,[3] there are at least four separate crimes under the Travel Act, assuming Step One (intent) is met:

| | |
|---|---|
| **Option 1** | Performance of act described in (a)(1) or (a)(3) |
| **Option 2** | Performance of act described in (a)(2) |
| **Option 3** | Attempt to perform act described in (a)(1) or (a)(3) |
| **Option 4** | Attempt to perform act described in (a)(2) |

Because § 1952(a) is divisible, the modified categorical approach applies.

### 4. Application of the Modified Categorical Approach

Count Six names the "Travel Act violation charged in Count Three" as its underlying "crime of violence." (S3 ¶ 10.) Count Three charges Vargas with violating the Travel Act when he

> knowingly traveled in interstate and foreign commerce and used the mail and a facility in interstate and foreign commerce, with the *intent to commit a crime of violence* . . . to further an unlawful activity . . . , and thereafter *performed a crime of violence*, namely assault in the second degree, in violation of New York Penal Law §§ 120.05(1) and (2) and 20.00, and assault in the first degree, in violation of New York Penal Law §§ 120.10(1) and 20.00, to further an unlawful activity, namely extortion in violation of New York and federal law, and aided and abetted the same, and death resulted.

[3] The Act may even be further divisible: by *intent* (to commit an act in (a)(1), (a)(2), or (a)(3)), by *method* (travel or use of mail), and by *non-(a)(2) performances and attempts* (of act performed or attempted described in (a)(1) or (a)(3)). *See also Haynes*, 936 F.3d at 690 (observing that "[w]e and other circuits interpret [] 'unlawful activity' . . . as an element that requires specific proof of a particular unlawful activity" such that § 1952(a) is also "divisible with respect to different kinds of 'unlawful activity'"). But because the Court concludes the Act is divisible based at least on distinct penalties and attempt versus performance—and because these further distinctions do not implicate the charges in Counts Three and Six here—it need not proceed through this additional divisibility analysis.

(S3 ¶ 5 (emphasis added).) As a result, this case implicates Option 2 from the above table, as Count Three charges Vargas with performing (and intending) a crime of violence as described in subsection (a)(2) of the Travel Act. Accordingly, the Court need not consider the acts described in subsections (a)(1) and (a)(3) in applying the modified categorical approach.

At the outset, this limited scope forecloses Vargas's argument that the Travel Act does not require the use of physical force because subsection (a)(1) "prohibits the distribution of the proceeds of any unlawful activity." (Mot. at 3.) This argument is applicable only to Options 1 and 3, with which Vargas is not charged here. Put differently, the Government has not charged Vargas with a subsection (a)(1) crime that counts distribution of the proceeds as an element (whether performed or attempted); instead, it has charged Vargas with a crime including performance of a subsection (a)(2) "crime of violence" in its elements.[4]

Vargas's next argument—that the Travel Act "can be violated without the intentional use or threatened use of physical force," such as through nonviolent "conduct intended to frighten" or "intimidate"—fails for the same reasons. (*Id.*) While difficult to parse, this argument seems to suggest that the Travel Act can be violated without a crime of violence because the acts described in subsection (a)(3) (e.g., promotion of unlawful activity) do not require physical force. But again, this argument is only applicable to Options 1 and 3, and it is Option 2—which includes in its elements performance of a subsection (a)(2) "crime of violence"—that is charged in Count Three.

[4] The Government correctly concedes that the intent element of the Travel Act charge (Step One) "does not require the actual, attempted, or threatened use of force." (MTD Opp. at 16.)

Because the Travel Act crime with which Count Three charges Vargas includes performance of a "crime of violence" as an element, *see* 18 U.S.C. § 1952(a)(2)(B), application of the modified categorical approach does not end here. Instead, "the elements of the underlying 'crime of violence' supporting [the] § 1952(a)(2)(B) charge" in Count Three "are incorporated as elements in the § 1952(a)(2)(b) charge itself." *Haynes*, 936 F.3d at 692; *see also id.* at 690 (collecting cases from across circuits regarding similar "statutory cross-references that are common in federal criminal law"). The Court must therefore apply the modified categorical approach to determine whether any of the charges underlying Count Three—namely, assault in the first and second degree under respectively NYPL §§ 120.05(1)-(2) and 120.10(1), as well as accomplice liability for both under § 120.00[5] (*see* S3 ¶ 5)—"would itself qualify as a crime of violence under § 924(c)." *Id.*;[6] *see also Mangione*, 818 F. Supp. 3d at 521 (explaining that only one of the enumerated underlying offenses "needs to qualify as a crime of violence for [the § 924(c) count] to survive"). Put simply, the question is whether assault in the first and/or second degree require the Government to "prove[] beyond a reasonable doubt, as an element of

[5] An individual charged with committing a crime of violence on a theory of accomplice liability is still charged with committing a crime of violence. *See Medunjanin v. United States*, 99 F.4th 129, 135-36 (2d Cir. 2024) (per curiam) ("join[ing] our sister Circuits" in holding that a "defendant convicted of aiding and abetting a crime of violence is therefore guilty of the crime of violence itself" for purposes of § 924(c)).

[6] Even if Vargas's argument that the Travel Act can be violated through nonviolent frightening or intimidating conduct is applicable to subsection (a)(2) crimes of violence, it is at least irrelevant to these specific underlying charges because conduct intended to merely frighten or intimidate does not satisfy their elemental requirements. *See* NYPL §§ 120.05(1)-(2), 120.10(1) (to be guilty of assault in the first or second degree, person must "cause[]" physical injury). The same goes for his additional argument that "the Travel Act does not require violence or threatened violence against the 'person or property of another'" (Mot. at 3), because these underlying assault charges require harm to a "person." *See* NYPL §§ 120.05(1)-(2), 120.10(1).

its case[,] the use, attempted use, or threatened use of force." *Id.* at 525 (quotation marks omitted) (citing *Taylor*, 596 U.S. at 850). The Court analyzes each underlying offense in turn.

**a. Assault in the Second Degree (NYPL §§ 120.05(1) and (2))**

Sections 120.05(1) and (2) of New York Penal Law respectively provide that a person is guilty of assault in the second degree when, "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person," or when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." "Serious physical injury" is a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." NYPL § 10.00(10). The terms "[d]eadly weapon" and "[d]angerous instrument" refer respectively to weapons and instruments that are "readily capable of causing death or other serious physical injury." *Id.* § 10.00(12)-(13).

In applying the modified categorical approach, the Second Circuit has held that assault in the second degree under these provisions constitutes a "crime of violence" within the meaning of 18 U.S.C. § 16(a), which "defin[es] crimes of violence in language 'virtually identical' to Section 924(c)(3)."[7] *United States v. Pena*, 161 F. Supp. 3d 268, 271 (S.D.N.Y. 2016) (Nathan, J.) (quoting *United States v. Acosta*, 470 F.3d 132, 134-35 (2d Cir. 2006) (per curiam)). First, in *Thompson v. Garland*, the Second Circuit held that a conviction under § 120.05(1) "meets § 16(a)'s physical force requirement" to constitute a "crime of violence" because "[a] person

[7] *Compare* 18 U.S.C. § 16(a) ("The term 'crime of violence' means . . . an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.") *with id.* § 924(c)(3)(A) ("[T]he term 'crime of violence' means an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another.").

who causes serious physical injury with the intent to do so, in violation of NYPL § 120.05(1), necessarily uses physical force." *Thompson v. Garland*, 994 F.3d 109, 112 (2d Cir. 2021) (per curiam). The *Thompson* court reasoned that "[i]t is impossible to cause bodily injury without applying force in the common-law sense," and "force that causes 'serious physical injury' under § 120.05(1) is" by definition "*violent* force" per NYPL § 10.00(10). *Id.* at 112 (cleaned up).

Second, in *Singh v. Barr*, the Second Circuit held that a conviction under § 120.05(2) also "falls within § 16(a)'s definition of a crime of violence." 939 F.3d 457, 464 (2d Cir. 2019) (per curiam). True, the provision refers to "physical injury," rather than "serious physical injury," as the *Singh* court acknowledged. *Id.* at 462. But even "assuming without deciding that this difference could be material, the deadly weapon or dangerous instrument element makes obvious that the statute requires the use of violent force," as both—per New York law's definitions—must be "readily capable of causing death or other serious physical injury." *Id.* at 462-63 (cleaned up).

"The Second Circuit applies case law interpreting Section 16 to . . . Section 924(c)(3)" because "much of the case law interpreting what is and is not a crime of violence under the categorical approach was created in the context of 18 U.S.C. § 16." *Pena*, 161 F. Supp. 3d at 271 (citing *Acosta*, 470 F.3d at 134-35); *cf. Stuckey v. United States*, 878 F.3d 62, 68 n.9 (2d Cir. 2017) ("[T]he identical language of the elements clauses of 18 U.S.C. § 16(a) and § 924(e)(2)(B)(i) means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute."). This Court follows suit. Based on the reasoning and holdings of *Thomson* and *Singh*, assault in the second degree as defined by NYPL § 120.05(1)-(2) is an offense that has "as an element the use, attempted use, or threatened use of physical force against

the person or property of another" under 18 U.S.C. § 924(c)(1)(A). It therefore qualifies as a crime of violence for purposes of Count Six.

**b. Assault in the First Degree (NYPL § 120.10(1))**

The Court's conclusion that assault in the second degree qualifies as an underlying crime of violence is sufficient, standing alone, to satisfy the modified categorical approach. *See Mangione*, 818 F. Supp. 3d at 521. In any event, the Court has little trouble concluding that assault in the first degree also qualifies as an underlying crime of violence.

Section 120.10(1) of New York Penal Law provides that a person is guilty of assault in the first degree when, "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." The terms "serious physical injury," "deadly weapon," and "dangerous instrument" carry the same meanings as they do in NYPL § 120.05(1)-(2). *See* NYPL. § 10.00(10), (12)-(13).

The Second Circuit held in *Singh v. Garland* that assault "is also a crime of violence under Section 16(a)'s definition," largely for the same reasons that assault in the second degree so qualifies. 58 F.4th 34, 37 (2d Cir. 2022) (per curiam) (*Singh II*). Applying the modified categorical approach, the *Singh II* court explained that "[t]he elements of this statute are either indistinguishable from or require a greater showing of force than . . . NYPL § 120.05, which we have previously ruled constitute crimes of violence under Section 16(a)." *Id.* at 36 (first citing *Thompson*, 994 F.3d at 111-12; and then citing *Singh*, 939 F.3d at 462-64). After all, "NYPL § 120.10(1) contains the same intent and serious physical injury elements as NYPL § 120.05(1), and requires the same showing of intent to cause physical injury and use of a deadly weapon or dangerous instrument as NYPL § 120.05(2)." *Id.* at 37. Thus, the statute's requirement of an

"intent to cause serious physical injury, particularly in combination with the deadly weapon or dangerous instrument element, necessarily encompasses the use of violent force required under Section 16(a)." *Id.* In light of the parallels between Section 16(a) and Section 924(c)(1)(A), *see Pena*, 161 F. Supp. 3d at 271, the Court concludes that assault in the first degree as defined by NYPL § 120.10(1) also has an element the force required to qualify as a crime of violence under the Travel Act.

In sum: The Travel Act is divisible, and the specific Travel Act crime with which Count Three charges Vargas incorporates by reference the underlying offenses of assault in the first and second degrees, in addition to accomplice liability thereto, under New York law. Because these underlying offenses include as a requisite element the use of violent force, Count Three charges Vargas with a crime of violence as required to undergird Count Six.

## III. Motion to Suppress

Vargas argues that the evidence obtained from the Cell-Site, iCloud, and Cellphone Warrants should be suppressed because each warrant lacks probable cause, and the latter two are overbroad and lack particularity. (Mem.) Assuming without deciding that Vargas has standing to bring this motion, the Court addresses Vargas's attacks on each warrant in turn.

### A. Cell-Site Warrant

The Cell-Site Warrant authorized the Government to collect both historical and prospective cell-site location information and pen register data from six cellphones including for a phone number ending in 7902. (*See* Cell-Site Warrant at 29-34.) The Cell-Site Warrant based probable cause on phone records revealing that the number in question was in frequent communication with a phone belonging to Ivan Collado in the lead-up to, performance of, and aftermath of the attempted kidnapping and murder. (*Id.* at 22-25.) In particular, the warrant's supporting affidavit pointed to a 28-minute call made at approximately 4:14 a.m. on November

26, 2023, around the time when the tracking device was installed on the victim's vehicle. (*Id.* at 23.) The affidavit also noted that the number in question was saved in Collado's phone as "Peligro," which is the Spanish word for danger. (*Id.* at 24.)

Vargas argues that one telephone call with Collado fails to provide a substantial basis for probable cause. (Mem. at 7-8.) However, the warrant cited not just one call, but nine communications between the phones in the few days before the murder, and the telephone call in question lasted nearly thirty minutes, in the middle of the night, around the time of the alleged crime. (Cell-Site Warrant at 23.) District courts in this Circuit have concluded that probable cause exists when a series of calls were made close in time to the crime at issue. *See, e.g.*, *United States v. Henry*, No. 25-CR-46, 2025 WL 2109082, at *5 (S.D.N.Y. July 28, 2025) (holding probable cause existed when eight calls were made within ten minutes of a crime); *United States v. Rutledge*, No. 23-CR-269, 2024 WL 1834801, at *3 (E.D.N.Y. Apr. 26, 2024) (reaching same conclusion when eleven calls were made within several hours of the crime). The Court concurs. The evidence in the affidavit of a series of communications from a man saved as "Danger" so close to the crime in question constitutes a substantial basis for probable cause. The motion to suppress the evidence obtained from the Cell-Site Warrant is thus denied.

**B. iCloud Warrant**

The iCloud Warrant sought all data stored on two Apple iCloud accounts allegedly associated with Vargas, including emails, instant messages, photographs, videos, location data, and device information. (iCloud Warrant at 46-49.) The iCloud Warrant based probable cause on the same information as the Cell-Site Warrant, as well as additional data showing that the phone with the number ending in 7902 was in the vicinity of the victim's home within a half hour of the murder and made the 28-minute call in the vicinity of the parking lot where the tracking device was installed. (*Id.* at 25-27.)

Vargas's claim that the iCloud Warrant lacks probable cause fails for similar reasons as his argument against the Cell-Site Warrant. Though Vargas insists that the warrant is supported only by a "[b]are-bones affidavit[]" (Mem. at 10), it relies on the same communications data as the Cell-Site Warrant and is buttressed by the additional cell-site data. Accordingly, like the Cell-Site Warrant, the iCloud Warrant is supported by a substantial basis for probable cause.

Vargas next argues that the warrant is overbroad and lacks particularity because it lacks content-based restrictions and a sufficient temporal limitation. (*Id.*) The Government retorts that the warrant's eighteen-month timeframe is necessary to deal with the complexity, severity, and duration of the case, and that the alleged conspirators remained in contact for months after the murder. (Opp. at 45-46.)

First, on the content-based restrictions, Vargas's argument that the iCloud Warrant authorizes an improper exploratory search fails. Whether assessed for breadth or particularity, adding language to a warrant that seeks "all" data is proper when, as here, law enforcement officers are instructed to only "review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities." (iCloud Warrant at 49.) *See, e.g.*, *United States v. Wallace*, 24-CR-411, 2025 WL 1435066, at *6 (S.D.N.Y. May 19, 2025) (stating standard for breadth); *United States v. Aminov*, 23-CR-110, 2024 WL 3104526, at *4 (S.D.N.Y. June 24, 2024) (stating standard for particularity).

Second, while the Second Circuit "has not yet addressed the impact of the absence of a time frame to [a warrant's] particularity" or otherwise adopted a bright-line rule on the relationship between temporal limitations and particularity, *United States v. Hernandez*, No. 09-CR-625, 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010), courts within the Circuit assess complexity, sophistication, and duration in determining whether a temporal scope is overbroad.

*See, e.g.*, *id.* (explaining that "the complexity and duration of the alleged criminal activities" counseled in favor of no temporal limitation); *United States v. Harvey*, No. 21-CR-335, 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022) (holding lack of temporal restriction rendered a warrant overbroad where the crimes were "relatively unsophisticated"). Moreover, "lack of a time frame in itself does not transform what is otherwise a relatively particularized document into an unconstitutional general warrant." *Hernandez*, 2010 WL 26544, at *11. In the present case, the iCloud Warrant *does* impose a temporal limit, is otherwise particularized, and concerns a multi-defendant drug and kidnapping conspiracy that resulted in a death. The warrant's temporal limitations and content allowances are therefore reasonable, and the motion to suppress the evidence obtained from the iCloud Warrant is denied.

### C. Cellphone Warrant

The Cellphone Warrant authorized the search of two cellphones seized, one belonging to Defendant Patricia Villalba, and another belonging to Vargas that was seized at the time of his arrest on February 5, 2025. (Cellphone Warrant at 18.) Vargas challenges the warrant only as to the device seized from him. (Mem. at 12.) The supporting affidavit established that the cellphone belonged to Vargas because it was taken from his person and that Vargas was involved in the alleged crime based on the allegations in the Second Superseding Indictment. (Cellphone Warrant at 7-8, 13; ECF No. 27 at 2-3.) It further relied on the electronic evidence gathered pursuant to the Cell-Site Warrant and iCloud Warrant: namely, additional communications between Vargas's cellphone and Collado's, and "photographs show[ing] worksheets detailing New York City Police Department and New York City Fire Department radio frequencies" found on an iCloud account associated with Vargas. (Cellphone Warrant at 9-11.)

Vargas's argument that the Cellphone Warrant lacks probable cause, is overbroad, and lacks particularity again fails. First, his argument that probable cause is lacking because there is

no allegation that the physical device seized was the same one used during the crime is made without any citation to precedent. To the contrary, *United States v. Silva* instructs that "a search warrant does not require probable cause of the *use* of the property in furtherance of criminal conduct, so long as there is probable cause that the location to be searched contains relevant evidence of the criminal conduct." 146 F.4th 183, 190 (2d Cir. 2025). The Cellphone Warrant's supporting affidavit cites myriad examples of other electronic evidence, including photographs of worksheets of police and fire department frequencies, which is sufficient for probable cause to believe further evidence exists on that phone. Second, while there is no temporal limitation for the material pulled, the warrant imposes the same content restrictions as the iCloud Warrant, limiting the search to evidence of the offense. (Opp. at 50.) Vargas offers no additional basis upon which an overbreadth or particularity argument could be made.

Accordingly, the motion to suppress the evidence obtained from the Cellphone Warrant is denied, and the Court concludes that there is no basis for an evidentiary hearing regarding any of the three warrants.

## IV. Motion to Sever

On August 27, 2026, Villalba pled guilty to counts 1 and 4 of the S2 Superseding Indictment, and on October 13, 2026, Collado pled guilty to counts 1 through 8 of the S3 Superseding Indictment. (*See* Opp. at 20; MTD Opp. at 9.) Because Collado is no longer scheduled to stand trial alongside Villalba or Vargas on January 11, 2027, Vargas's motion to sever is denied as moot.

## V. Conclusion

For the foregoing reasons, Vargas's motion to dismiss Count Six is denied, his motion to suppress is denied, and his motion to sever is denied as moot. Vargas is instructed to file a

redacted version of his motion to suppress and sever on the docket within fourteen days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 96 and to close the redacted version of Vargas's motion to suppress and sever after it is docketed. Additionally, in light of Collado's guilty plea, the Clerk of Court is directed to close the motions at Docket Numbers 82, 83, and 84. Finally, the Clerk of Court is directed to close the motions at Docket Numbers 98, 100, and 101.

SO ORDERED.

Dated: November 23, 2026
New York, New York

J. PAUL OETKEN
United States District Judge